UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                      :
   ASHIQ K. SAUDAGAR,                                 :
                                                      :
                              Plaintiff,              :
                                                      :
                   v.                                 :        18 Civ. 437 (KPF)
                                                      :
   WALGREENS CO. and DUANE READE                      :      **OPINION AND ORDER**
   INC.,                                              :
                                                      :
                              Defendants.             :
                                                      :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

        Plaintiff Ashiq Saudagar, proceeding *pro se*, brought suit against his

former employers, the Walgreens Company and Duane Reade Inc. (together,

"Defendants"), alleging discrimination on the basis of race, color, and national

origin.  Defendants move to dismiss based on the applicable statutes of

limitations, the election of remedies doctrine, and Plaintiff's failure to state a

claim.  Taking as true all well-pleaded allegations, the Court finds that

Plaintiff's claims for violations of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e to 2000e-17, and the New York City Human Rights

Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131, are barred by the

statute of limitations and the election of remedies doctrine, respectively.  The

Court also finds that Plaintiff has failed to state a claim for a violation of 42

U.S.C. § 1981, but dismisses this claim without prejudice to its potential

repleading.  Accordingly, Defendant's motion to dismiss is granted in part with

prejudice and in part without prejudice.

# BACKGROUND[1]

## A. Factual Background

Plaintiff was born in Pakistan and is of South Asian descent. (Compl. ¶ 1).[2] For nearly 15 years, from January 10, 2000, until his termination on November 19, 2014, Plaintiff was employed at several Duane Reade stores in Manhattan. (*Id.* at ¶ 4). For the last nine of those years, from 2005 to 2014, Plaintiff worked as a store manager, first at the Duane Reade location at Broadway and 91st Street and then at the location at 111 Worth Street. (Pl. Opp. 2). Defendants own and operate Duane Reade stores. (Compl. ¶¶ 4-6).

### 1. The Termination

Plaintiff alleges that in 2009, Defendants named Daniel Gralton the district manager for the district in which Plaintiff worked. (Pl. Opp. 2). In this position, Mr. Gralton was Plaintiff's supervisor. (*Id.*). Mr. Gralton, who is

---

[1]    The facts in this section are drawn principally from the allegations in the Notice of Removal and the Complaint ("Compl."). (Dkt. #1). Certain other facts are drawn from Plaintiff's opposition papers. (Dkt. #28). *See Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). The Court also relies on two exhibits provided in the Declaration of Aaron Warshaw, Esq., in Support of Defendants' Motion to Dismiss Plaintiff's Complaint. (Dkt. #21). Exhibit 1 is the Determination and Order After Investigation of the New York State Division of Human Rights ("NYSDHR Order"). Exhibit 2 is an Equal Employment Opportunity Commission Dismissal and Notice of Rights ("EEOC Notice"). The manner in which the Court may consider these documents is discussed *infra*.

For ease of reference, the Court refers to the Defendants' Memorandum of Law in Support of the Motion to Dismiss as "Def. Br." (Dkt. #20); to Plaintiff's Amended Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #28); and to Defendants' Reply Memorandum of Law in Support of the Motion to Dismiss as "Def. Reply" (Dkt. #29).

[2]    Plaintiff's Complaint contains numbered Paragraphs 1 through 6. Beginning on Page 2 of the Complaint, the remaining allegations appear in unnumbered paragraphs. The Court refers to such unnumbered paragraphs by noting the pages on which they appear without a paragraph symbol.

Caucasian, is alleged to have been openly discriminatory in his treatment of Plaintiff. (Compl. ¶ 2). Among other allegations, Plaintiff claims that Mr. Gralton continually made racially demeaning comments towards Plaintiff and belittled Asian people by yelling, "You are not in your country. You are in America[,]" at Plaintiff in front of other Asian employees. (*Id.* at 6-7). Plaintiff claims that Mr. Gralton's abuse left him in constant stress, leading to a stroke in 2012. (*Id.* at 7). On November 19, 2014, Defendants fired Plaintiff. (Compl. ¶ 4).

### 2. The NYSDHR and EEOC Investigations

Eleven months after his termination, on October 19, 2015, Plaintiff filed a complaint with the New York State Division of Human Rights (the "NYSDHR") and the federal Equal Employment Opportunity Commission (the "EEOC") regarding Mr. Gralton's treatment. (NYSDHR Order 1; Pl. Opp. 3). Plaintiff claimed that discrimination on the basis of age, national origin, and race/color had led to his wrongful termination. (*Id.*). On April 11, 2016, the NYSDHR dismissed Plaintiff's Complaint for lack of probable cause to support Plaintiff's allegations. (NYSDHR Order 2-3). The NYSDHR provided Plaintiff a notice of his right to appeal the decision in New York State Supreme Court within 60 days of the service of the determination. (*Id.*). This date would have been June 10, 2016. No appeal was filed.

On June 23, 2016, the EEOC adopted the NYSDHR's findings and provided Plaintiff with a right to sue notice. (EEOC Notice). Plaintiff was advised that he had 90 days to file a lawsuit after receipt of the EEOC Notice.

(*Id*.).  This date would have been September 21, 2016.  No suit was filed during that time period.

### 3.  Plaintiff's Medical Problems

Plaintiff acknowledges that he was untimely in several of his filings, and attributes the delays to various health problems that have beset him since his termination and that, he claims, have made it difficult for him to pursue legal remedies.  Plaintiff was diagnosed in June 2015 with depression and post-traumatic stress disorder.  (Pl. Opp. 3).  From June 2015 through June 2017, Plaintiff took medications for these conditions that affected his memory and recall, and frequently left him nauseated, groggy, and anxious.  (*Id*.).  In July 2016, Plaintiff attempted to take his life, and he suffered a second stroke on July 26, 2016.  (*Id*. at 3-4).  Plaintiff was comatose for a week in late July and early August 2016, and he remained partially hospitalized until late September 2016.  (*Id*. at 4).  Plaintiff continues to address his psychological problems through counseling.  (*Id*.).

## B.  Procedural Background

On November 21, 2017, Plaintiff filed this suit in New York State Supreme Court, alleging discrimination on the basis of race, color, and national origin.  Plaintiff's Complaint does not cite to any particular statutes, nor does it clearly identify any legal claims, beyond the allegation of discrimination on these bases.  (Compl. ¶ 3).  On January 1, 2018, Defendants filed a notice of removal to this Court.  (Dkt. #1).

On June 8, 2018, Defendants filed a motion to dismiss the claims as time-barred. (Dkt. #20-21). Plaintiff finalized his opposition to the motion on August 2, 2018. (Dkt. #26-28). Plaintiff's opposition clarifies that his claims should be understood as arising under Title VII and the NYCHRL, for which the statutes of limitations should be equitably tolled. (Pl. Opp. 1). Plaintiff also argues that his Complaint should be read to include a claim under 42 U.S.C. § 1981, or in the alternative that he should be given leave to amend his Complaint to bring such a claim. (*Id.*). Defendants replied to Plaintiff's opposition submission on August 17, 2018, seeking dismissal of all claims and a denial of Plaintiff's request for leave to amend the Complaint. (Dkt. #29). Accordingly, the motion is fully briefed and ripe for decision.

## DISCUSSION

**A.    Plaintiff's Title VII Claims Are Dismissed as Untimely**

**1.    Applicable Law**

**a.    Motions to Dismiss Under Rule 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal

quotation marks omitted)). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation and quotation marks omitted); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed as to do justice."). To survive a Rule 12(b)(6) motion to dismiss, however, a *pro se* plaintiff's factual allegations must be at least "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

That said, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is

inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### b. Documents a Court May Consider When Ruling on a Motion to Dismiss Under Rule 12(b)(6)

Defendants have relied upon two documents outside of the pleadings: the NYSDHR Order and the EEOC Notice.  (Warshaw Decl., Ex. 1-2).  They argue that these documents are public records of which the Court can take judicial notice.  (Def. Br. 3-4).  The Court agrees that it may take judicial notice of these documents, but disagrees with Defendants as to the legal import of taking such notice.

A Rule 12(b)(6) opinion assesses "the legal feasibility of the complaint," without "weigh[ing] the evidence that might be offered to support it," and is therefore generally confined to the four corners of a complaint.  *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). "[D]ocuments outside the complaint are generally off-limits on a motion to dismiss," unless they are incorporated in the complaint by reference, integral to the complaint, or matters of which the court can take judicial notice.  *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

In order to address certain of Defendants' arguments, the Court will take judicial notice of the NYSDHR Order and the EEOC Notice. However, the Court may not, in the Rule 12(b)(6) setting, consider the documents for the truth of their respective contents. *See Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."). Instead, the Court may take judicial notice of the facts that (i) the NYSDHR proceeding took place, and (ii) an opinion "contain[ing] certain information" was issued, "without regard to the truth of [the opinion's] contents." *Staehr* v. *Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).[3]

### c.     Dismissals Based on Title VII's 90-Day Filing Deadline

An employment discrimination suit brought under Title VII must be filed within 90 days of a plaintiff's receipt of a "right to sue" letter from the EEOC. 42 U.S.C. § 2000e-5; *Sherlock* v. *Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) ("In order to be timely, a claim under Title VII ... must be filed within [ninety] days of the claimant's receipt of a right-to-sue letter."). Title VII's time limitation is "analogous to a statute of limitations." *Briones* v. *Runyon*, 101 F.3d 287, 290 (2d Cir. 1996); *accord Hardaway* v. *Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (citation omitted). "This requirement should be strictly enforced and not extended 'by even one day.'" *Holmes* v. *NBC/GE*,

---

[3]     Extra-record documents are considered differently in the context of motions brought pursuant to Federal Rule of Civil Procedure 12(b)(1), as discussed *infra* at Section B.1.a.

914 F. Supp. 1040, 1042 (S.D.N.Y. 1996) (citing *Johnson* v. *Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984)); *see also Tiberio* v. *Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) (finding claim time-barred when claimant commenced suit 93 days after receipt of right to sue letter); *cf. Zerilli-Edelglass* v. *N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003) (noting that filing limits are subject to equitable tolling, but affirming dismissal of complaint filed 92 days after receipt of right to sue letter). "A plaintiff's failure to file a claim within the time limits set by Title VII ... will ordinarily preclude [him] from pursuing that claim in federal court, and can warrant dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Moore* v. *City of New York*, No. 15 Civ. 4578 (KPF), 2016 WL 3963120, at *6 (S.D.N.Y. July 21, 2016) (citation omitted).

## 2. Discussion

Plaintiff concedes that his Title VII claim is untimely, but argues that the limitations period should be tolled due to various medical and mental health conditions. (Pl. Opp. 5-8). As Plaintiff does not dispute it, the Court can conclude that the EEOC Notice issued on June 23, 2016, required Plaintiff to file a complaint by September 21, 2016, and thus that the limitations period had long passed when Plaintiff filed this Complaint on November 21, 2017. (EEOC Notice). Therefore, the Court examines Plaintiff's arguments for equitable tolling of the limitations deadline.

The 90-day limit is "a statutorily-imposed requirement necessitating strict adherence" *Celestine* v. *Cold Crest Care Ctr.*, 495 F. Supp. 2d 428, 432

(S.D.N.Y. 2007). However, equitable tolling may be warranted where (i) a party "has acted with reasonable diligence during the time period [he] seeks to have tolled," and (ii) the party "has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80-81 (citation omitted); *see also Pace* v. *DiGuglielmo*, 544 U.S. 408, 418 (2005) (noting that a party seeking equitable tolling must demonstrate extraordinary circumstances). The Second Circuit has permitted equitable tolling in circumstances where "a plaintiff's medical condition or mental impairment prevented [him] from proceeding in a timely fashion." *Zerilli-Edelglass*, 333 F.3d at 80-81; *see also, e.g., Brown* v. *Parkchester S. Condos.*, 287 F.3d 58, 60-61 (2d Cir. 2002) (vacating district court dismissal on timeliness grounds, finding that plaintiff had presented sufficient evidence to warrant evidentiary hearing "to determine to what extent, if any, [plaintiff's] condition did in fact inhibit his understanding or otherwise impair his ability to comply").

In determining whether to exercise its discretion to allow tolling based on mental illness, a court must look for a "particularized description of how [the plaintiff's] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights[.]" *Boos* v. *Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *see also id.* at 184 ("As [*Canales* v. *Sullivan*, 936 F.2d 755, 759 (2d Cir. 1991),] indicates, the question of whether a person is sufficiently mentally disabled to justify tolling of a limitation period is, under the law of this Circuit, highly case-specific."). "The burden of demonstrating the appropriateness of equitable tolling, however, lies with the plaintiff." *Id.* at 185.

Here, Plaintiff cannot demonstrate the extraordinary circumstances required for equitable tolling. Plaintiff has not alleged hospitalization since September 2016. (Pl. Opp. 4). While Plaintiff discusses in detail the medical problems that he experienced leading up to his hospitalization in the summer of 2016 (*id.* at 3-4), his descriptions are far more cursory regarding the last two years, which are of course the relevant time frame. Between the period of his last hospitalization and the filing of this Complaint, the medical issues that Plaintiff describes are "medications … which often affected his memory and recall, and made him feel nause[ated], groggy, and exhausted," and "psychotherapy treatment sessions … for depression and suicidal thoughts." (*Id.*). The Court acknowledges that these are serious medical conditions. It commends Plaintiff for pursuing mental health treatment and hopes for his continued recovery. However, the short description offered here is not "a particularized description" of how Plaintiff's condition prevented him from pursuing his rights in the year between his discharge and his filing of this Complaint. *See Moore*, 2016 WL 3963120, at *8 ("Plaintiff does provide information about the conditions with which she was diagnosed, but has not provided a 'particularized description' sufficient to demonstrate that she was wholly incapable of pursuing her legal rights during the period in question.").

Plaintiff's arguments that the actions he did take bespeak reasonable diligence in pursuing his claims are plainly insufficient to support equitable tolling. Plaintiff states that he placed calls to Defendants' employee relations hotline between receiving the EEOC Notice and filing his Complaint. (Pl.

Opp. 8).  He also mentions consulting with counsel after his termination.  (*Id.* at 5).  Neither of these items suggests that Plaintiff was incapable of acting on his legal rights.  After all, the standard for equitable tolling on mental health grounds requires more than a demonstration of continued interest in the legal claims; Plaintiff must show a severe impairment that compromised his ability to comply with the filing deadlines.  *Cf. Bolarinwa* v. *Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (citing *Zerilli-Edelglass*, *Brown*, *Boos*, and *Canales* to conclude that, "in order to justify tolling of the AEDPA one-year statute of limitations due to mental illness, a habeas petitioner must demonstrate that her particular disability constituted an 'extraordinary circumstance' severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so").  Plaintiff's efforts suggest an awareness of his rights and some ability to act on them.  Ultimately, these actions only underscore Defendants' argument that Plaintiff's long delay in bringing this case forecloses equitable tolling and requires dismissal of the Title VII claims.  The Court concludes, as a matter of law, that Plaintiff is not entitled to equitable tolling and is barred from bringing Title VII complaints.[4]

---

[4]    As Defendants note (Def. Br. 5-6), Plaintiff missed an earlier Title VII deadline, namely the obligation to file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).  Claims falling outside this statute of limitations are also time-barred, unless they are subject to waiver, estoppel, or equitable tolling, *Zipes* v. *Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), or unless they fall within the continuing violation exception to the 300-day rule, *Patterson* v. *County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004).  On this issue as well, Plaintiff seeks equitable tolling.  (Pl. Opp. 5-7).  Because Plaintiff's medical issues during this period are more severe, and because the record is clear that no tolling of the 90-day limitation period is warranted, the Court does not address the 300-day issue.

**B.** **The Court Lacks Jurisdiction to Consider Plaintiff's NYCHRL Claim**

    **1.** **Applicable Law**

        **a.** **Motions to Dismiss Under Rule 12(b)(1)**

Defendants also claim that the Court lacks jurisdiction to consider Plaintiff's NYCHRL claims. In this regard, Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: facial motions and fact-based motions. *See Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017).[5] A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). A plaintiff opposing such a motion bears "no evidentiary burden." *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject-matter jurisdiction. *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to

---

[5]     The Court addresses this distinction in detail in *Chakraborty* v. *Soto*, No. 16 Civ. 9128 (KPF), 2017 WL 5157616, at *6 n.5 (S.D.N.Y. Nov. 6, 2017).

make that determination, a court must accept as true the complaint's allegations "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the" complaint and its exhibits. *Carter*, 822 F.3d at 57. "In opposition to such a motion, [a plaintiff] must 'come forward with evidence of their own to controvert that presented by the defendant,' or may instead 'rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'" *Katz*, 872 F.3d at 119 (quoting *Carter*, 822 F.3d at 57). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to" subject matter jurisdiction. *Carter*, 822 F.3d at 57.

Here, too, courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)). But "jurisdictional requirements are not relaxed based on a litigant's *pro se* status." *Escoffier* v. *MFY Legal Servs.*, No. 13 Civ. 8089 (LGS), 2015 WL 221048, at *1 (S.D.N.Y. Jan. 15, 2015). Thus, "[d]espite the lenient standards with which courts review *pro se* complaints, *pro se* plaintiffs must establish

subject matter jurisdiction." *Smith* v. *Sch. of Visual Arts*, No. 15 Civ. 8049 (RA), 2016 WL 3440553, at *2 (S.D.N.Y. June 9, 2016) (internal quotation marks omitted) (quoting *Levi* v. *RSM McGladrey, Inc.*, No. 12 Civ. 8787 (ER), 2014 WL 4809942, at *3 (S.D.N.Y. Sept. 24, 2014)).

### b.    The Election of Remedies Doctrine

"Under the so called 'election of remedies' doctrine, a complainant who files a complaint with either the NYSDHR or [the New York City Commission on Human Rights (the "NYCCHR")] cannot subsequently sue in court on the same claims." *Bray* v. *N.Y.C. Dep't of Educ.*, No. 11 Civ. 7884 (DLC), 2013 WL 3481532, at *11 (S.D.N.Y. July 10, 2013).  The rule is set forth in Section 8-502(a) of the NYCHRL:

> Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice as defined in chapter one of this title or an act of discriminatory harassment or violence as set forth in chapter six of this title shall have a cause of action in any court of competent jurisdiction … unless such person has filed a complaint with the City Commission on Human Rights or with the State Division of Human Rights with respect to such alleged unlawful discriminatory practice.

N.Y.C. Admin. Code § 8-502(a); *see also Higgins* v. *NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011).

Under the NYCHRL, "the remedies of administrative review through the [NYSDHR or the NYCCHR] or judicial review are *mutually exclusive*[.]" *Williams* v. *City of N.Y.*, 916 F. Supp. 2d 517, 521 (S.D.N.Y. 2013) (citation omitted). Perhaps more importantly, "[t]he election of remedies bar is jurisdictional; a complaint that has previously been dismissed by the NYSDHR or NYCCHR

must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Marecheau* v. *Equal Employment Practices Comm'n*, No. 13 Civ. 2440 (VEC), 2014 WL 5026142, at *4 (S.D.N.Y. Sept. 30, 2014).

The election of remedies doctrine imposes two kinds of jurisdictional bars: direct and derivative. *See Smith*, 2016 WL 3440553, at *2. The direct bar divests courts of subject matter jurisdiction "over any claims previously submitted to the NYSDHR" or NYCCHR (the direct bar). *Id.* And the derivative bar prevents courts from hearing "claims arising out of the same incident[s] on which [an NYSDHR or NYCCHR] complaint was based." *Id.* (internal quotation mark omitted) (quoting *Higgins*, 836 F. Supp. 2d at 188). Because of this derivative bar, "[c]laims need not be identical in order to be barred by the state or city election of remedies provisions." *Rosario* v. *N.Y.C. Dep't of Educ.*, No. 10 Civ. 6160 (DLC), 2011 WL 1465763, at *2 (S.D.N.Y. Apr. 15, 2011). To the contrary, if there is "a sufficient identity of issue[s] … between" the claims a plaintiff pursued before the NYSHRL or NYCCHR, and those he alleges in a federal complaint, then the election of remedies doctrine precludes courts from adjudicating those federal claims. *Id.* (quoting *Spoon* v. *Am. Agriculturalist, Inc.*, 478 N.Y.S.2d 174, 175 (3d Dep't 1984)).

The derivative bar is expansive: A plaintiff cannot escape the bar by raising a new legal theory, if that theory is premised on the same events underlying his NYSDHR or NYCCHR complaint. *See Owens* v. *Starbucks Corp.*, 37 N.Y.S.3d 207 (Table), 2016 WL 1602753, at *3 (N.Y. Sup. Ct. Apr. 21, 2016);

*see, e.g.*, *Rasmy* v. *Marriott Int'l, Inc.*, No. 16 Civ. 4865 (AJN), 2017 WL 773604,
at *2, 5 (S.D.N.Y. Feb. 24, 2017) (finding that election of remedies doctrine
barred plaintiff from pursuing NYCHRL hostile work environment claim in
federal court, even though he sought relief only under the NYSHRL before the
NYSDHR, because in both actions plaintiff's claims "ar[o]se from the same
discriminatory practices" and were "premised on substantially the same series
of incidents" (internal quotation marks and citations omitted)); *Musaji* v. *Banco
do Brasil*, No. 10 Civ. 8541 (RJH), 2011 WL 2507712, at *5 (S.D.N.Y. June 21,
2011) (collecting New York cases supporting the proposition that "a plaintiff
merely asserting a new legal theory in front of a court based on the same
underlying conduct alleged at the [NYCCHR] is barred from the judicial remedy
sought").

## 2. Discussion

Plaintiff's claim under the NYCHRL is foreclosed by the election of
remedies doctrine. Because Plaintiff brought an NYSHRL claim that was
investigated and dismissed with a determination of no probable cause, the
election of remedies doctrine bars the NYCHRL claim to the extent it is based
on the same incident. *See Smith*, 2016 WL 3440553, at *2.

Before the NYSDHR, Plaintiff argued that Walgreens had discriminated
and retaliated against him in violation of the NYSHRL because of his age, race,
and national origin. (NYSDHR Order 1). Plaintiff based that claim on Mr.
Gralton's alleged harassment and Plaintiff's allegedly wrongful termination. (*Id.*
at 2). Plaintiff's NYSHRL complaint relied for factual support on Mr. Gralton's

negative performance reviews and workplace conduct. (*Id.*). These are the precise claims and facts that Plaintiff relies on in this Complaint. Therefore, the Court lacks subject matter jurisdiction over those claims and must dismiss them. *See Chakraborty*, 2017 WL 5157616, at *7-9.[6]

**C.     The Court Dismisses Plaintiff's Section 1981 Claim, But Grants Plaintiff Leave to Amend**

**1.     Defendants Had Adequate Notice of Plaintiff's Section 1981 Claim**

For the first time in his opposition brief, Plaintiff specifies that his Complaint alleges a Section 1981 claim. To allege such a claim, a plaintiff must allege (i) membership in a protected class, (ii) that the defendant discriminated on the basis of race, and (iii) that the discrimination concerned an activity enumerated in the statute. *Mian* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087-88 (2d Cir. 1993). The Supreme Court has determined that Section 1981 provides a basis to assert claims against private employers for wrongful termination on the basis of race. *See CBOCS West, Inc.* v. *Humphries*, 553 U.S. 442, 455–57 (2008).

The statute of limitations for claims under Section 1981 is four years. *Jones* v. *R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (citing 28 U.S.C. § 1658). In theory, therefore, the statute of limitations would not bar Plaintiff's

---

[6]     Plaintiff's NYCHRL claim is also brought outside the statute of limitations. Plaintiff acknowledges that the limitations period expired three years after his termination on November 19, 2017, two days before he brought his Complaint. (Pl. Opp. 7). The Court does not discuss equitable tolling of this claim, because even if the Court allowed tolling, the claim would still be precluded by the election of remedies doctrine.

claim in the Complaint.  However, Defendants argue, Plaintiff's Complaint did

not provide them with adequate notice of a potential Section 1981 claim.

The Court finds that Plaintiff's Complaint provides the necessary facts to

give Defendants adequate notice of a Section 1981 claim.  Plaintiff's Complaint,

when read under the liberal pleading standards accorded *pro se* litigants,

provides the following narrative:  Plaintiff is a member of a minority group

(South Asian); Defendants discriminated against him due to Mr. Gralton's

antipathy towards Asians; and Plaintiff was terminated on the basis of his race

with supposed disciplinary infractions as a mere pretext.  (Pl. Opp. 8-9).

Among other things, the Complaint alleges that Mr. Gralton specifically

told Asian employees that they did not know how to work in the store.  (Compl.

6).  It further alleges that Mr. Gralton yelled at Plaintiff: "You are not in your

country.  You are in America." (*Id.*).  More to the point, the Complaint alleges

that Mr. Gralton specifically yelled at Plaintiff in front of other Asian employees,

rather than white employees.  (*Id.* at 6-7).  These allegations, taken together

and taken as true for purposes of this exercise, undercut Defendants'

statement that Plaintiff's pleading fails to give "notice that Plaintiff asserted a

Section 1981 claim." (Def. Reply 7).

While the Court agrees that Plaintiff's Complaint is difficult to follow and

contains a great deal of information that is not relevant to a Section 1981

claim, the first two paragraphs of the Complaint allege discrimination on the

basis of race.  (Compl. ¶¶ 1-2).  These allegations, coupled with the facts in the

Complaint, lead the Court, "interpret[ing the complaint] to raise the strongest

arguments that [it] suggest[s]," to consider Defendants to be adequately forewarned of the Section 1981 claim.  *See Cruz*, 202 F.3d at 597.

## 2. Plaintiff's Section 1981 Claim Is Not Precluded by the NYSDHR Order

Alternatively, Defendants argue under Rule 12(b)(6) that Plaintiff is precluded from litigating his Section 1981 claims in the instant action because of the "no probable cause" finding by the NYSDHR.  (Def. Reply 8-10; *see* NYSDHR Order 2).  After all, Plaintiff presented identical allegations to the NYSDHR, which rejected them on the merits.  (*Id.*).  Though Defendants raise valid points in this regard, the Court declines, on the record before it, to find the claims precluded.

### a. Applicable Law

With respect to employment discrimination claims under Section 1981, "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts."  *Johnson* v. *Cty. of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (quoting *University of Tennessee* v. *Elliott*, 478 U.S. 788, 799 (1986)).  "[NYSDHR] decisions are given preclusive effect when (i) a plaintiff's current § 1981 claim is sufficiently similar to his claim before the [NYSDHR], and (ii) the plaintiff had an adequate opportunity to litigate his claim in front of the Division."  *Martin* v. *City Univ. of New York*, No. 17 Civ. 6791 (KPF), 2018 WL 6510805, at *6 (S.D.N.Y. Dec. 11, 2018).  The burden of proving identity of the issue rests on the proponent of

collateral estoppel, while the opponent bears the burden of proving that he or she did not have a full and fair opportunity to litigate the issue. *See Kosakow* v. *New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001).

  **b.**  **Analysis**

  In the instant action, Plaintiff's claims are identical to those he brought in his NYSDHR proceeding. As before, Plaintiff claims that Defendants violated the law by discriminating against him and ultimately firing him because of his race. The issues are sufficiently identical for purposes of the preclusion analysis.

  The Court, therefore, examines the more difficult question of whether Plaintiff had a full and fair opportunity to litigate. "At this stage of the analysis, courts look to a variety of non-dispositive factors when making a determination and consider 'the various elements which make up the realities of litigation.'" *Martin*, 2018 WL 6510805 at *6; *see also Basak* v. *New York State Dep't of Health*, 9 F. Supp. 3d 383, 396 (S.D.N.Y. 2014) ("This form of assessment is certainly not formulaic, and requires the court, on a case-by-case basis, to balance a number of potentially competing considerations."). Courts will examine whether the prior investigation included "any exchange of discovery, witness interviews, conferences between the parties, or hearings." *Martin*, 2018 WL 6510805 at *6 (citing *United States* v. *E. River Hous. Corp.*, 90 F. Supp. 3d 118, 153 (S.D.N.Y. 2015)).

  As in *Martin*, a case recently decided by this Court, the Court has minimal facts about the NYSDHR proceeding at this stage of the litigation. In

*Martin*, the Court examined the case law regarding preclusion and found that numerous courts in this District had declined to find preclusion when dealing with Plaintiffs who proceeded *pro se* before the NYSDHR.  *Martin*, 2018 WL 6510805 at *6-7.  Here, too, the Court lacks information regarding "whether Plaintiff (i) proceeded pro se during the [NYSDHR] adjudication, (ii) was provided with discovery, or (iii) had the opportunity to present and cross-examine witness.  The only pertinent document is the [NYSDHR's] written opinion, which discloses no information about the process itself."  *Id.* at *7.

The Court sees no grounds for differentiating this case from *Martin*.  In both cases, a lack of information about the state proceeding prevents the Court from conducting the required analysis for preclusion and leads the Court to deny Defendants' claim for same at this stage in the litigation.

### 3.  Plaintiff's Complaint Fails to State a Claim Under Section 1981, But Plaintiff Is Granted Leave to Amend

Finally, Defendants argue that Plaintiff has failed to state a claim under Section 1981, and the Court agrees.  Plaintiff provides a long description of his time working under Mr. Gralton, but his allegations regarding racial discrimination are largely conclusory.  He states that Mr. Gralton "expressed a preference for white people[.]" (Compl. 6-7).  However, he provides no factual support for this statement with regards to workplace benefits such as promotions or extra time off.  The principal facts to which Plaintiff points to distinguish the treatment of white employees from Asian ones are remarks —namely, Mr. Gralton's allegedly repeated statements to Plaintiff in front of his

fellow Asian employees that, "You are not in your country.  You are in America."  (*Id.* at 6).

Defendants argue that such allegations do not state a claim for racial discrimination, as they relate to Plaintiff's national origin rather than his race.  (Def. Reply 8).  The Court considers this argument semantic hairsplitting: Plaintiff does not allege that this statement was a one-off statement made in reference to his Pakistani heritage.  Rather, he alleges that Mr. Gralton made the statement on multiple occasions, specifically in front of the store's Asian employees.  (Compl. ¶ 6).  The Court has no trouble concluding that such a remark could plausibly support a finding of racial discrimination.  There is no suggestion, for example, that Mr. Gralton made this comment with awareness of his employees' countries of birth or immigration status.  Rather, the alleged statement seems designed to exclude Asian individuals as foreign and unwelcome.  To make such a remark once is clearly offensive, and to do so on multiple occasions in front of specifically chosen employees could plausibly support a finding of discrimination on the basis of race.

However, the Complaint is defective in other respects, as it fails to provide the requisite particularized allegations to state a claim for discrimination.  The Second Circuit has provided a test for examining whether allegedly offensive remarks suggest discriminatory bias or are "stray remarks," the latter of which generally "do not constitute sufficient evidence to make out a case of employment discrimination."  *Danzer* v. *Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).  The test considers:

[i] who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); [ii] when the remark was made in relation to the employment decision at issue; [iii] the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and [iv] the context in which the remark was made (i.e., whether it was related to the decision-making process)

*Fried* v. *LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (summary order). While this test is primarily used to determine the weight that is accorded to offensive remarks, in this case, it is Plaintiff's sole well-pleaded allegation of discrimination. Therefore, to survive a motion to dismiss, Plaintiff must plead with particularity that the remark displayed discriminatory bias in the context of an employment decision. The Court does not find that Plaintiff has done this.

While Plaintiff has alleged that Mr. Gralton was his superior and that the alleged remark is racially discriminatory, the Complaint is entirely unclear as to when and how frequently the remarks were made or their connection to Plaintiff's termination. To determine whether these remarks could state a claim under Section 1981, Plaintiff must allege that they were at least somewhat proximate to the termination, and were not "remote and oblique … in relation to the employer's adverse action." *See Henry* v. *Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). The Court also observes that the Complaint provides a long description of clashes between Plaintiff and his assistant manager in the days leading up to his termination. (Compl. 3-5). The format of the Complaint suggests that these disputes were the proximate cause of the termination, as the description of these events is far more detailed than the

24

description of the alleged racial abuse. Furthermore, the Court cannot tell whether Plaintiff has alleged constant harassment or a few comments occurring over the course of years. *See White* v. *Andy Frain Servs., Inc.*, 629 F. App'x 131, 134 (2d Cir. 2015) (summary order) ("[S]everal off-color comments over the course of a year and a half about [Plaintiff] being black and Jewish ... were no more than stray remarks."). Without such information, the Court concludes that Plaintiff's allegations fall short of the pleading requirement that he allege racial discrimination with particularity.

However, the Court agrees with Plaintiff that he is entitled to leave to amend his Complaint. The deficiencies in his pleading are the absence of particularized facts to support his allegation of racial discrimination. The Court does not consider the possibility foreclosed that Plaintiff may be able to allege such facts. As Plaintiff points out, the Second Circuit has held that "[a] court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (Pl. Opp. 10 (quoting *Gomez* v. *USAA Federal Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). *See generally Ganley* v. *City of New York*, 734 F. App'x 784, 786 (2d Cir. 2018) (summary order) (instructing district courts to "grant a *pro se* litigant leave to amend 'at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated'" (quoting *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Plaintiff has not yet amended his Complaint and, as the Court discussed above, a valid claim under Section 1981 may exist.

The Court pauses here to note that the NYSDHR finding and the minimal facts provided by Plaintiff regarding racial discrimination will make it difficult for any amended complaint to survive future dispositive motions. Plaintiff should keep this in mind in making a decision regarding repleading. However, the Court does not find, on the record before it, that any amendment would be futile.

## CONCLUSION

For the reasons above, Defendants' motion to dismiss is GRANTED. Plaintiff's Title VII claims are dismissed with prejudice as untimely. Plaintiff's NYCHRL claims are dismissed without prejudice for lack of jurisdiction. Plaintiff's Section 1981 claim is dismissed without prejudice, with Plaintiff granted leave to amend. Plaintiff is hereby ORDERED to provide a letter to the Court on or before **March 1, 2019**, stating whether he intends to file an amended complaint.

The Clerk of Court is directed to terminate the motion at docket entry 19.

SO ORDERED.

Dated:     February 8, 2019
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

Ashiq K. Saudagar
35 Randolph Street
Yonkers, NY 10705